UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff/Respondent, | ) No. 2:09-CR-33-DCR-HAI-2 |
| v. | ) No. 2:18-CV-38-DCR-HAI |
| LAZELLE MAXWELL, | ) RECOMMENDED DISPOSITION |
| Defendant/Movant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal prisoner Lazelle Maxwell claims that he is entitled to habeas relief because he was denied due process and because his counsel, David Fessler, was constitutionally ineffective. The Court conducted an evidentiary hearing on the latter claim. A review of the evidence reveals that Fessler diligently and conscientiously prepared for trial and appropriately advised Maxwell along the way. Fessler's account is corroborated by a series of letters he exchanged with Maxwell and bolstered by Fessler's sincere, candid, and self-critical demeanor. On the other hand, Maxwell, recognizing that his allegations are not supported by the written record, goes so far as to accuse Fessler of withholding additional letters, and he even questions whether Fessler had some nefarious motive. There is no credible evidence to support Maxwell's accusations. Maxwell also swears that Fessler failed to advise him on fundamental aspects of his case such as the nature of the conspiracy charge against him.

The Court credits Fessler's account, rejects Maxwell's, and therefore recommends that Maxwell's motion under 28 U.S.C. § 2255 (D.E. 314) be **DENIED**.

I.

The procedural history of this case is lengthy. However, a brief overview will suffice for purposes of Maxwell's present motion. Maxwell was first indicted in April 2009. D.E. 3. In June 2009, a superseding indictment was returned which charged Maxwell with conspiring to distribute and to possess with the intent to distribute fifty grams or more of a mixture or substance containing a detectable amount of cocaine base (crack cocaine) and with conspiring to distribute and to possess with the intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin. D.E. 65 at 1–2. Following the denial of his motion to suppress, Maxwell proceeded to a jury trial. *See* D.E. 92; D.E. 133.

Initially, Maxwell was represented by attorney John Alig. D.E. 26. However, after Alig withdrew from the case because of a conflict of interest, Fessler was appointed to represent Maxwell. D.E. 42; D.E. 46. Fessler represented Maxwell beginning on May 29, 2009, which was before the superseding indictment was returned, through his sentencing. *See* D.E. 46; *see also* D.E. 205. Maxwell's jury trial lasted six days. *See* D.E. 133; D.E. 135; D.E. 136; D.E. 137; D.E. 139; D.E. 140. At the conclusion of the trial, the jury found Maxwell guilty of both counts charged in the superseding indictment. D.E. 146. Subsequently, District Judge Reeves sentenced Maxwell to 240 months on the cocaine conspiracy count and 120 months on the heroin conspiracy count, to be served consecutively, for a total term of 360 months, to be followed by a total of 10 years of supervised release. *See* D.E. 208 at 2–3.

On direct appeal, the United States Court of Appeals for the Sixth Circuit affirmed Maxwell's conviction and sentence. *See United States v. Shields*, 415 F. App'x 692, 705 (6th Cir. 2011); *see also* D.E. 233 at 23. In addressing Maxwell's claim of insufficiency of the evidence,

the Sixth Circuit discussed the wealth of evidence presented at trial identifying Maxwell as being involved in the conspiracies:

> In this case, eight witnesses, several of whom were Maxwell's alleged co-conspirators, identified Maxwell as the leader of a conspiracy to distribute large quantities of crack cocaine and heroin in the Northern Kentucky area. Additionally, cellular phones seized from the three locations tied to the drug sales were linked via programmed numbers to the phone number assigned to Maxwell. McIntosh, the registered owner of the cellular phone with Maxwell's assigned number, testified that she obtained this phone for Maxwell at his request. This phone number either received or made calls to Maxwell's sister on nine occasions in May 2008. Additionally, Ross, the alleged co-leader of the conspiracy along with Maxwell, testified that the co-conspirators sold approximately fifteen ounces of crack cocaine and fifteen to twenty ounces of heroin in Northern Kentucky.

*Shields*, F. App'x at 703–04; *see also* D.E. 233 at 20. The United States Supreme Court denied Maxwell's petition for a writ of certiorari in June 2011. *Maxwell v. United States*, 564 U.S. 1029 (2011) (mem.); *see also* D.E. 236.

In June 2012, Maxwell filed a motion to vacate under 28 U.S.C. § 2255. D.E. 244. Upon review, and on the recommendation of the magistrate judge, Judge Reeves denied Maxwell's motion, but issued a certificate of appealability on the limited issue of "whether Maxwell's trial counsel erred under *Strickland v. Washington*, 466 U.S. 668 (1984), by failing to challenge the charges against Maxwell in Counts One and Two of the Superseding Indictment as multiplicitous."[1] D.E. 269 at 18 (internal quotation marks omitted).

On appeal, the Sixth Circuit found the indictment to be multiplicitous because the counts were based on the same conspiracy. *See Maxwell v. United States*, 617 F. App'x 470, 473 (6th Cir. 2015); *see also* D.E. 282 at 4. Further, in light of the United States' concession that both prongs of the *Strickland* analysis were met, the Sixth Circuit determined that Maxwell received ineffective assistance at the trial level. *Maxwell*, 617 F. App'x at 473; *see also* D.E. 282 at 4. As

---

[1] As explained in Judge Reeves's opinion, an indictment is multiplicitous if "it improperly charge[s] 'the same offense in more than one count of a single indictment.'" D.E. 269 at 8 (quoting Black's Law Dictionary (9th ed. 2009)).

a remedy, the Sixth Circuit remanded Maxwell's case to Judge Reeves with instructions to vacate Maxwell's conviction for one of the two conspiracy counts, vacate the special assessment for the vacated count, and resentence him on the remaining count. *Maxwell*, 617 F. App'x at 480; D.E. 282 at 17. At resentencing, Judge Reeves vacated the heroin conspiracy conviction and resentenced Maxwell to 360 months of imprisonment to be followed by 10 years of supervised release on the cocaine conspiracy conviction. *See* D.E. 295 at 1–3.

Maxwell's present § 2255 motion was docketed on March 19, 2018. D.E. 314. Because he received a full resentencing following his new judgment, his motion is not considered second or successive, and this Court has jurisdiction to consider the motion. *See* D.E. 319. Upon consideration, the undersigned determined that factual disputes existed concerning Maxwell's claims of ineffective assistance of counsel and scheduled an evidentiary hearing to develop those issues. *See* D.E. 328 at 5–6; D.E. 332; D.E. 335. At the evidentiary hearing, held on December 21, 2018, Maxwell was represented by counsel, Fessler and Maxwell both testified,[2] and numerous exhibits were admitted into evidence. D.E. 337. The Court has reviewed the record in detail, and the matter now stands submitted to the undersigned for a recommended disposition. *See* D.E. 319.

II.

Under the Antiterrorism and Effective Death Penalty Act of 1996, the Court considers whether Maxwell's sentence was imposed in violation of the Constitution or the laws of the United States. *See* 28 U.S.C. § 2255(a). In his motion, Maxwell claims that the government committed a *Brady* violation and that he received ineffective assistance of counsel based on his counsel's failure to review all discovery with him and based on the advice his counsel gave him regarding

---

[2] Maxwell filed a waiver of his attorney-client privilege regarding his claims of ineffective assistance of counsel. D.E. 321.

the law of conspiracy. He claims he would have pled guilty had Fessler provided him effective assistance.

In the § 2255 context, Maxwell bears the burden of proving his allegations by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Additionally, the Court recognizes that Maxwell filed his motion as a *pro se* litigant, that is without the assistance of an attorney. Thus, the Court will construe Maxwell's filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Castro v. United States*, 540 U.S. 375, 381–83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (per curiam).

### III.

The Court can easily dispense with Maxwell's first claim of error: that the government failed "to disclose all exculpatory evidence to the defense in violation of the Fifth and Fourteenth Amendments." D.E. 314-1 at 1. Here, Maxwell submits that phone records were a crucial piece of evidence in his case and that the government failed to provide the defense with the telephone numbers it intended to use at trial. *See id.* at 2.

The nature of the phone-related evidence is important to all of Maxwell's claims. One critical issue in the case was whether Maxwell was the conspirator known by the street name of "Stone." D.E. 340 at 11–12. Maxwell defended the case on the bases that he was not Stone and that he had nothing to do with the conspiracy. *Id.* at 12. Through voluminous records concerning phone numbers contacted by or associated with Stone's phone, the government attempted to link Maxwell to Stone's phone number and the conspiracy. *Id.* at 13. Fessler testified that the potential link to Stone's phone was the "tangible thing" the defense was concerned about. *Id.* at 83. He also testified that there were "hundreds and hundreds of pages" of phone records filling "two Bankers boxes." *Id.* at 84, 121. The phone records were material to the case. Maxwell claims

5

that the government did not respond to a request from Fessler, by email, to provide a narrowed list of the phone numbers that it intended to use at trial.  *See* D.E. 314-1 at 2; *see also* D.E. 323-1 at 17 (email from Fessler to the government requesting evidence, including the phone numbers the government thought were connected to cell phones owned or used by Maxwell).

As an initial matter, the government argues that Maxwell has procedurally defaulted his *Brady* claim by failing to raise it on direct appeal.  *See* D.E. 323 at 2–3.  Upon review of the record, that position appears well-founded because Maxwell did not raise his *Brady* claim on direct appeal, see *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001), and he has not shown that either cause and actual prejudice excuse his default or that he is actually innocent, see *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  Indeed, rather than challenge the government's assertions concerning procedural default on his *Brady* claim, Maxwell argues the merits.  *See* D.E. 327 at 4–5.

Still, even if the Court were to address Maxwell's *Brady* claim on the merits, his claim would be unsuccessful.  *Cf. King v. Morgan*, 807 F.3d 154, 158 (6th Cir. 2015) (recognizing that, in certain situations, a court may consider a *Brady* claim in a new habeas petition when a defendant is challenging an underlying conviction and/or a new sentence).  Indeed, Maxwell has not shown that the government withheld any evidence that was favorable to him as the accused.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").  This conclusion is not dependent upon any factual dispute and was therefore not a part of the evidentiary hearing.  Instead, Maxwell's statements in his own filings compel the finding that the information he sought from the government was inculpatory rather than exculpatory.  *See* D.E.

327 at 5 ("While the Court may consider this more of a Jencks violation as the evidence was possibly inculpatory, rather than exculpatory, its production was mandatory, so as Petitioner could make a knowing decision whether to accept a plea offer or listen to counsel and reject the offer.").

Moreover, Maxwell states that, if he had known of the evidence on a disc containing numbers contacted by the phone associated with Stone, including that "his sister was on the list," then "he would not have put her on the stand and would have taken the 15 year plea offer and cooperated with the Government and received a downward departure for substantial assistance to the prosecution." D.E. 314-1 at 2–3.  Thus, the phone evidence cannot be considered favorable to the accused because it led to his conviction.  Indeed, as described by the Sixth Circuit on direct appeal, the phone records added to the bases for the jury to convict Maxwell, meaning they were inculpatory, rather than exculpatory.  *See Shields*, 415 F. App'x at 703–04.  And, Maxwell describes the records in a similar manner, saying that "these telephone records were the key to the Government obtaining a conviction against Petitioner." D.E. 314-1 at 2.

Maxwell's claim that the government did not respond to a request from Fessler, by email, to provide a narrowed list of the phone numbers that it intended to use at trial is not supported by the record.  *See id.*; *see also* D.E. 323-1 at 17 (email from Fessler to the government requesting evidence, including the phone numbers the government thought were connected to cell phones owned or used by Maxwell) *and* Defense Exhibit 11 (a letter from the assistant United States attorney to Fessler stating that, to comply with Rule 16, the government was providing the defense with "a CD-R disc containing records of calls associated with four telephone numbers during May 2008").  Nor would it matter if it were.  Maxwell admits that his counsel received a disc with telephone numbers, which forecloses any argument that the government failed to turn over relevant evidence under Federal Rule of Criminal Procedure 16.  *See* D.E. 327 at 4–5.  Maxwell simply

7

claims that Fessler did not fully review the disc with him. That is not a *Brady* violation, and is addressed below in the Court's analysis of Maxwell's ineffective-assistance claims.

Thus, his claim of a *Brady* violation fails.

IV.

Next, the Court must consider Maxwell's claim that his "[t]rial counsel was constitutionally ineffective in advising Petitioner to reject a plea offer and go to trial, without full[y] informing him of the evidence against him."[4] *See* D.E. 314-1 at 3. Specifically, Maxwell claims that Fessler advised him "to reject a plea offer of 15 years and the opportunity to get a downward departure under U.S.S.G. § 5K1 for offering substantial assistance to the Government." *Id.*

Maxwell's allegations on this ground are two-fold. Here, he contends that Fessler failed to show him a disc that contained telephone records because, when Fessler attempted to show Maxwell the records, Fessler's laptop battery died and he did not return to the jail to show Maxwell that evidence. *See id.* at 4. Next, Maxwell contends that Fessler failed to advise him regarding the law of conspiracy, including that he could be found guilty even though he never actually possessed drugs. *See id.* at 6.

Under the test outlined in *Strickland v. Washington*, to succeed on an ineffective assistance of counsel claim, Maxwell must make two showings. First, he "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Second, Maxwell must show that he was prejudiced by defense counsel's actions. In other words, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because Maxwell argues that he was prejudiced by his counsel's advice to reject a plea offer and to proceed to trial, he:

---

[4] Unlike his *Brady* claim, Maxwell's claims of ineffective assistance of counsel are not procedurally barred. *See United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012).

8

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

As a preliminary matter, the record establishes that there was no formal plea offer by the government to Maxwell in this case. It is true that Fessler, in his affidavit, references plea offers by the government. *See* D.E. 323-1 at 4 ¶ 16 ("Evidence of an offer being extended was also shared with the Defendant."); *see also id.* at 5 ¶ 23 ("Affiant advised the Defendant of all plea offers and tried to discuss with the Defendant the perils of going to trial."). And it is also true that Fessler told Maxwell before trial, by letter, that "[a]n offer has been made by the U.S. to enter a cooperative plea which could result in a sentence under the 20 year mandatory you are facing" and that they would "talk about this more next time" they met. *Id.* at 15.

At the evidentiary hearing, Fessler's testimony established that the government had not extended a formal offer to Maxwell. *See Missouri v. Frye*, 566 U.S. 134, 146 (2012) (stating that "the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations"). Indeed, although counsel discussed the *potential* for a plea offer, no formal written offer had ever been extended by the government.[5] Fessler testified that offers from the United States must be made in writing. D.E. 340 at 107–08. He also testified that he reviewed his records and could not locate a formal written offer and that no "real" offer beyond

---

[5] Maxwell's testimony that there was a proposed plea on the table is not inconsistent with Fessler's testimony. *See* D.E. 340 at 161. Instead, the testimony establishes that, although the government offered the possibility of a plea agreement, no formal plea agreement was offered.

9

early negotiations was ever made. *See id.* at 108. Maxwell has not provided any evidence to the contrary. Even if Maxwell had instructed Fessler to pursue the preliminary offer made by the government, there is no evidence it would have ripened into an agreement that would have been presented to, and approved by, Judge Reeves.

This forecloses the relief that Maxwell seeks. In other instances, courts have determined that, if a counsel's ineffective assistance led an individual to reject a guilty plea, the proper avenue is to order the prosecution to reoffer the plea agreement. *See Lafler*, 566 U.S. at 171, 174. However, Maxwell has not cited any cases that demonstrate the Court could now order the United States to offer him a plea agreement that it did not formally extend in the first instance. A "defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Frye*, 566 U.S. at 149 (citations omitted); *see also Lafler*, 566 U.S. at 168 (stating that ineffective assistance claim relating to a plea offer does not arise "[i]f no plea offer is made").

Additionally, Fessler testified that, although it is his practice to offer advice regarding plea offers from the government, see Docket Entry 340 at 34–35, the ultimate decision of whether to enter a plea or to proceed to trial was always Maxwell's decision, *see id.* at 29, 35.[6] And, Fessler testified that Maxwell was adamant that he wanted to go to trial. *See id.* at 29; *see also* D.E. 323-1 at 3 ¶ 14. In this posture, the Court finds Maxwell has not shown prejudice as to his claims of ineffective assistance of counsel. *See Frye*, 566 U.S. at 151 ("[I]f the trial court could have refused to accept the plea agreement, and if Frye fails to show a reasonable probability the trial court would have accepted the plea, there is no *Strickland* prejudice.").

---

[6] Maxwell's testimony that Fessler never made it clear that it was Maxwell's decision whether to take a plea is not believable. D.E. 340 at 148. That advice was made clear to Maxwell by Fessler in writing. *See* D.E. 323-1 at 33 (Fessler stating to Maxwell that the decision of whether to plead is "totally your decision.").

10

Still, setting the nature of Maxwell's requested relief—to require the government to offer a plea that was never formally offered in the first place—aside, Maxwell's claims of ineffective assistance of counsel fail, both as to his allegations concerning discovery that Fessler failed to show him and as to law that he claims Fessler failed to explain to him. This is because Maxwell has not shown Fessler's actions were deficient.

A.

The Court will first address Maxwell's argument that Fessler was deficient for failing to provide him with certain discovery in his case. Here, Maxwell claims that Fessler failed to show him a disc that had been provided to the defense by the government that contained phone records, including a phone number his sister, Teresia Maxwell, had used. The sister was called as a defense witness.

Specifically, Maxwell alleges that Fessler came to see him while he was housed at the county jail before trial "to go over discovery material on a CD (disk), which supposedly contained all the telephone numbers to be used by the Government at trial." D.E. 314-1 at 4. He claims that, when Fessler began to show him the telephone numbers on the disc, the battery on Fessler's laptop died. *Id.* Maxwell states that, prior to the laptop battery dying, he "did not have a chance to review any of the telephone numbers or cell phone logs" and that, although Fessler assured Maxwell he would come back and review the numbers and logs on the disc, Maxwell was "never shown or given a list of numbers with his sister's telephone number on it." *Id.* Maxwell further discusses the importance of his sister's phone number, stating that, if he had known her number would appear on the phone records, he would have pled guilty. *Id.* at 5.

At the evidentiary hearing, Fessler testified as to the significance of Maxwell's sister's phone number being linked to Maxwell and how he remembers that part of trial clearly, even

11

though nearly a decade has passed.[7] Fessler said that, after the government asked Teresia about an old phone number, "you could just feel the air come out of the balloon" and that he knew Maxwell's case would be difficult to win. D.E. 340 at 55–56. On direct appeal, the Sixth Circuit relied upon the phone evidence as it related to Teresia in affirming Maxwell's conviction and sentence. *See Shields*, 415 F. App'x at 703–04 ("McIntosh, the registered owner of the cellular phone with Maxwell's assigned number, testified that she obtained this phone for Maxwell at his request. This phone number either received or made calls to Maxwell's sister on nine occasions in May 2008.").

The Court must first determine whether Maxwell has shown Fessler was deficient in his handling of discovery in Maxwell's case, both as to discovery as a whole and as to Teresia's phone number. Upon review, the Court finds that Fessler's actions were not deficient.

First, concerning the broad discovery in this case, although Maxwell claims that he did not receive all of his discovery, including the disc with phone evidence, the Court finds Maxwell is not credible. *See United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990) (suggesting that a court should detail the reasons for its credibility determination). On the other hand, Fessler was candid, sincere, and even self-critical. *See* D.E. 340 at 53 (Fessler stating "I did not realize at some point, not only did [Maxwell's sister] change phones, but when she did, she changed her phone number, and so the old phone number is what, what got us."). Fessler acknowledged the revelation of the sister's old phone number was a dramatic event that he remembers clearly even after nearly

---

[7] According to the trial transcript, the government asked Teresia on cross-examination whether she had ever used a particular phone number and she said she had. *See* D.E. 219 at 150–51, 153. Following Teresia's testimony, the government called a rebuttal witness who said Teresia's old number had either been called by, or had called, the number associated with a phone that had been given to Maxwell. *Id.* at 170–72.

12

ten years. *Id*. at 130. Fessler's detailed account of his pre-trial preparation is consistent with the letters he exchanged with Maxwell that were attached to his affidavit and admitted into evidence at the hearing. *See, e.g.*, D.E. 323-1.

Notably, Fessler was previously found ineffective in this case. He candidly acknowledged that event and its impact upon him. D.E. 340 at 93. He even took steps to inquire as to whether he should have been removed from this District's panel of Criminal Justice Act attorneys. *Id.* The Court declined to remove him. *Id.* at 132–33. Fessler's testimony on these issues struck the undersigned as remorseful and professionally appropriate. Thus, the record establishes that Fessler is honest and forthright concerning the consequences of his actions. He earnestly described being "elbow deep" in the phone numbers in anticipation of Maxwell's trial. *See id.* at 74, 80. The Court believes Fessler's testimony that he provided Maxwell with all of the discovery in his case. *See id.* at 112 (stating that everything he received from the prosecutor he shared with Maxwell); *see also id.* at 84 ("[W]e had hundreds and hundreds of pages, and maybe overlap of all those phone numbers, and Mr. Maxwell, of course, had all those because we'd be in the jail going over 'em.").

While the Court found Fessler's testimony to be candid and supported by the written record, the Court found Maxwell's to be difficult to follow and, at times, evasive. Maxwell's allegations are not supported by the letters he exchanged with Fessler. The record establishes that Maxwell was, as Fessler put it, "a prolific writer." *Id.* at 24. Yet, Maxwell's claim that Fessler's laptop battery died is not reflected in any of the letters. Plus, there is no letter from Maxwell requesting that Fessler return to review the discovery in full. Aware of this gap in the written record, Maxwell testified that Fessler has withheld letters on the issue. *See id*. at 149 (Maxwell stating "it's letters that he's not providing right now."); *see also id*. at 154 (Maxwell stating Fessler "has a letter that he's not producing to the courts right now."). Maxwell even questioned whether

13

Fessler knew about his sister's old number all along. *See id*. at 167 (Maxwell stating "I don't really know what was going on with Mr. Fessler, what did he knew about the phones, I mean, as far as the numbers?"). There is no evidence to support Maxwell's allegations that Fessler has concealed evidence or had an improper motive during the case. The nature of those unsupported allegations discredits Maxwell's testimony as a whole.

More particularly, the Court rejects Maxwell's factual contentions concerning Fessler's laptop on the basis of Fessler's testimony that the battery on his laptop could not have died because he always carried the laptop's charging cord in his laptop case. *Id.* at 42. And, perhaps most importantly, Fessler testified that the sequence of events as alleged by Maxwell was "not possible" because the defense did not even have all of the discovery at the time Maxwell claims Fessler's laptop battery died.[8] *Id.* at 42–43. In this context, the Court cannot find Fessler's actions in reviewing the discovery with Maxwell to have been deficient.

Similarly, the Court finds that Fessler's actions in relation to Maxwell's sister's phone number were not deficient. The law does not require perfect performance by counsel, and it only instructs that counsel make a reasonable investigation in every instance. *Strickland*, 466 U.S. at 691. As explained by the Supreme Court in *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

---

[8] A letter from the government to defense counsel on July 14, 2009, confirms the timing. *See* D.E. 340 at 101. In that letter, the government states that it is providing a "CD-R disc containing records of calls associated with four telephone numbers during May 2008." Maxwell claims that Fessler's computer died during a meeting with him at the jail sometime between July 2 and July 6, 2009, see Docket Entry 314-1 at 4, but based on the letter, the government had not even provided that disc yet.

Fessler's testimony establishes that he made a reasonable investigation regarding Maxwell's sister's phone number in this case. He described "hundreds and hundreds of pages" of records and how he discussed particular numbers with witnesses. *See* D.E. 340 at 84. He testified that, other than the surprise as to the sister's phone number, nothing else occurred at trial that hurt Maxwell that the defense did not anticipate. *Id.* at 84, 89. In particular as it relates to Teresia, Fessler testified that he either asked her if her phone number was on the records the defense had been provided or he asked her for her number so he could review the discovery. *Id.* at 53 ("I'm sure I either asked her if her phone number's going to appear on that list, or if -- or I checked it myself because I would have because we were elbow deep into the phone numbers."); *see also id.* at 57–58. What Fessler did not ask was whether Teresia ever had a number other than the one he knew about. *Id.* at 57. At trial, she was asked by the prosecutor about such other number, she identified one, and it matched the list of numbers known to have contacted, and to have been contacted by, Stone's phone. *See* D.E. 219 at 150–51, 153, 170–72.

Moreover, Fessler testified that, following his discussions with Teresia, "everything was clear and everything looked good for trial," so the defense was confident it "could put her on the stand with no problems." *Id.* at 53. Finally, Fessler stated that the only way he believed he could have discovered prior to trial that Maxwell's sister's phone number would appear in the records that the government sought to link to Maxwell was if he "would have thought to ask her if she's ever had a different phone or a different phone number." *Id.* at 81. That he did not ask this one question does not render his investigation unreasonable. *See Strickland*, 466 U.S. at 691. Reasonableness does not require omniscience. The record does not support a conclusion that the

15

omission of this single question in witness preparation constitutes deficient performance. On the contrary, Fessler was well-prepared.[9]

In sum, Maxwell has failed to show that his counsel performed deficiently as it relates to discovery in his case.

B.

Last, the Court considers Maxwell's assertion that Fessler misadvised him on the law regarding conspiracy. Here, Maxwell claims that Fessler advised him "that the evidence against him was circumstantial, he had never possessed any drugs, therefore he should reject the plea offer of 15 years and provid[ing] substantial assistance to the prosecution, thereby receiving the benefit of U.S.S.G. § 5K1." D.E. 314-1 at 6. Maxwell states that he "rejected a 15 year plea offer based [on] the belief that he needed to possess drugs, at some point in time." D.E. 327 at 6.

However, again crediting Fessler's version, he "explained to the Defendant that circumstantial evidence was still acceptable evidence and enough to convict him." D.E. 323-1 at 5–6 ¶ 24. Fessler further informed Maxwell by letter before the trial that all of the defendants in Maxwell's case and two in another case were "going to testify against [Maxwell] either directly or indirectly." *Id.* at 14. Additionally, Fessler testified at the evidentiary hearing that he advised Maxwell about what the government would have to prove to convict him, see Docket Entry 340 at 28, and that he explained to Maxwell that Maxwell could be held criminally responsible for drugs he never touched, *id.* at 37.

---

[9] However, if the Court were to find that Fessler's performance fell below an objective standard of reasonableness concerning his investigation into Teresia's phone number, prejudice would be a closer question. Fessler testified that, if he had known Teresia had an old phone number that would appear on the records the government sought to tie to Maxwell, Fessler would not have called her as a witness. D.E. 340 at 75. Notably, of course, eight witnesses identified Maxwell as the leader of the conspiracy. Maxwell claims that knowledge of the link between his sister's number and Stone's phone would have caused him to plead guilty. *Id.* at 175. That claim of prejudice is limited by the *Lafler* test discussed above.

16

Fessler described having tried many cases in federal court, and he said he "always" uses the example of a bank robbery when he is trying to describe conspiracy law to his clients. *See id.* at 36. Concerning Maxwell's case, Fessler said that the conversation would have probably gone as follows: "Lazelle, you and I decide we're going to rob a bank, and I'm the get-away driver. And you go in to rob the bank. And you shoot somebody and kill 'em while you're in there while I'm sitting in the car. I'm just as guilty in most cases of murder as you are. So we have to be really careful with this conspiracy stuff." *Id.* at 36–37. By describing the law of conspiracy to Maxwell and informing him that circumstantial evidence could be used to convict him, Fessler's performance was not deficient.

At the evidentiary hearing, Maxwell testified that Fessler did not explain to him: what the government would have to prove to convict him of a conspiracy; that the government could prove his guilt even if he never touched any drugs; or that the government could convict him based on circumstantial evidence. *Id.* at 143. Again, Maxwell is not credible. *See Cooke*, 915 F.2d at 252. Fessler's descriptions of his dedicated approach to Maxwell's case cause the Court to reject Maxwell's testimony that he was not informed of these legal aspects of his case. Moreover, the Court observes that Maxwell is smart, and thus finds incredulous his statement that, even though he knew he was facing a potential lifetime maximum term in prison, he chose to go to trial without understanding the nature of the conspiracy charge. *See* D.E. 340 at 217.

For these reasons, Maxwell's claim of ineffective assistance of counsel as it relates to Fessler's advice concerning the nature of conspiracy law fails because Maxwell has again failed to show that Fessler's actions were deficient.

17

V.

For the foregoing reasons, the Court **RECOMMENDS** that Maxwell's motion under 28 U.S.C. § 2255 (D.E. 314) be **DENIED**. The Court further **RECOMMENDS** that no certificate of appealability issue.

Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted). The Court has considered the issuance of a certificate of appealability as to each of Maxwell's claims. No reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no certificate of appealability should issue. Although Fessler acknowledged he failed to ask Maxwell's sister a question that turned out to be important, in the overall context of this case, whether that single omission constituted deficient performance is not debatable.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, **by the District Court.** Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of

further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 16th day of January, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge